Robert SIEVERT and Patricia Sievert, Plaintiffs-Respondents-Cross Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross Respondent, Petitioner,

BANKER'S LIFE & CASUALTY COMPANY, Defendant-Respondent.

Supreme Court

*No. 93–0272. Oral argument November 9, 1994.—Decided March 2, 1995.*

(Also reported in 528 N.W.2d 413.)

For the defendant-appellant-cross respondent-petitioner there were briefs by *Bruce B. Deadman* and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay and oral argument by *Bruce B. Deadman.*

For the plaintiffs-respondents-cross appellants there was a brief by *Michael S. Siddall* and *Herrling, Clark, Hartzheim & Siddall, Ltd.,* Appleton and oral argument by *Michael S. Siddall.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals, *Sievert v. American Family Mutual Insurance Co.,* 180 Wis. 2d 426, 509 N.W.2d 75 (Ct. App. 1993), affirming the order of the circuit court of Outagamie county, Harold V.

Froehlich, circuit judge. After the jury found neither Robert Sievert nor Everett Pierre negligent, the circuit court granted Robert and Patricia Sievert, the plaintiffs, a new trial in the interest of justice. The court of appeals granted the defendant leave to present an appeal from a nonfinal order of the circuit court. The court of appeals then affirmed the order of the circuit court.

This court granted American Family Insurance Company's petition for review, limiting review to one issue: Does the recreational immunity statute limiting a property owner's liability, sec. 895.52 Stats. 1991–92, apply to a person who is injured when walking uninvited onto a neighbor's dock to communicate a greeting? In other words, was Robert Sievert engaging in a recreational activity as defined by sec. 895.52(1)(g) when he was injured? We conclude, as did the circuit court and court of appeals, that the recreational immunity statute does not apply to the facts of this case because the activity in issue was not a recreational activity as defined by the statute. Accordingly, we affirm the decision of the court of appeals.

I.

For the purposes of this review, the facts are undisputed. The Sievert and the Pierre families own summer cottages two doors away from each other on Grass Lake. On August 1, 1988, Everett Pierre was attempting to remove weeds and debris from the swimming area of the lake directly in front of his property. To accomplish his purpose, he pointed his pontoon boat toward the shore, tied both sides of the boat to the ends of parallel docks on either side of the swimming area, and turned on the boat's engine. This process used the

boat's "prop wash" to push the muck and weeds out of the swimming area.

While Everett Pierre was operating the boat in this manner, Robert Sievert came on the Pierres' property to say hello to Everett Pierre. The Pierres had not expressly invited Robert Sievert to their cottage that evening. Sievert walked onto one of the docks and, as he stepped onto the end section, it collapsed. Robert Sievert fell approximately four feet and severely injured his heel.

The Sieverts initiated this suit against the Pierres and their insurer, American Family, alleging that the Pierres were negligent in the manner in which they designed, installed and maintained the dock and in operating their boat while attached to the dock. The Sieverts subsequently dismissed the Pierres from the lawsuit.

American Family moved for summary judgment, asserting that the recreational immunity statute applied to the case at bar. The circuit court denied the motion. We review a summary judgment using the same methodology as the circuit court.

## II.

The issue presented in this case is one of statutory interpretation. We must determine whether the plaintiffs' suit is barred by the recreational immunity statute which limits a property owner's liability for an injury to, or caused by, someone engaging in a recreational activity on the owner's property.[1] More

---

[1] Section 895.52(2), Stats. 1991–92, provides, in relevant part, as follows:

(2) No duty; immunity from liability. (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an

specifically, the issue in this case is whether Robert Sievert was engaging in a recreational activity when he was injured.[2] Recreational activity is defined in sec. 895.52(1)(g), Stats. 1991–92, as follows:

> owner owes to any person who enters the owner's property to engage in a recreational activity:
>
> 1. A duty to keep the property safe for recreational activities.
>
> 2. A duty to inspect the property, except as provided under s. 23.115(2).
>
> 3. A duty to give warning of an unsafe condition, use or activity on the property.
>
> (b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property . . ..

Almost every state has adopted a recreational immunity statute. For discussions of these statutes, including the Wisconsin statute, see Stuart J. Ford, Comment, *Wisconsin's Recreational Use Statute: Towards Sharpening the Picture at the Edges,* 1991 Wis. L. Rev. 491; Dean P. Laing, Comment, *Wisconsin's Recreational Use Statute: A Critical Analysis,* 66 Marq. L. Rev. 312 (1983); Richard A. Lehman, Note, *Torts—Statutes—Liability of Landowner to Persons Entering for Recreational Purposes,* 1964 Wis. L. Rev. 705; *Gibson v. Keith,* 492 A.2d 241 (Del. 1985).

[2] The issue of whether an injured party was engaged in a recreational activity as defined by the statute is litigated with some frequency. *See, e.g., Linville v. City of Janesville,* 184 Wis. 2d 705, 516 N.W.2d 427 (1994); *Shannon v. Shannon,* 150 Wis. 2d 434, 446–448, 442 N.W.2d 25 (1989); *Nelson v. Schreiner,* 161 Wis. 2d 798, 469 N.W.2d 214 (Ct. App. 1991); *Johnson v. City of Darlington,* 160 Wis. 2d 418, 427, 466 N.W.2d 233 (Ct. App. 1991); *Kostroski v. Marathon,* 158 Wis. 2d 201, 203, 462 N.W.2d 542 (Ct. App. 1990); *Kruschke v. City of New Richmond,* 157 Wis. 2d 167, 458 N.W.2d 832 (Ct. App. 1990); *Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 241, 448 N.W.2d 256 (Ct. App. 1989);

Any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.[3]

In deciding the applicability of the recreational immunity statute, the court must first determine whether the activity in which Robert Sievert was engaged at the time of his injury is within the statutorily defined phrase "recreational activity," sec. 895.52(1)(g). Interpretation and application of a statute to undisputed facts is generally considered a question of law which this court determines independently of other courts, benefitting from their analyses.

*Taylor v. City of Appleton,* 147 Wis. 2d 644, 646, 433 N.W.2d 293 (Ct. App. 1988); *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 488, 431 N.W.2d 696 (Ct. App. 1988).

[3] The legislature has amended the recreational immunity statute once since Sievert's accident. The amendment affected sec. 895.52(6)(a), Stats. to increase the maximum amount (from $500 to $2000) that a land owner may collect annually in recreational use fees and still claim limited liability under the statute. 1989 Wis. Act 31, sec. 2823m.

Section 895.52(1)(g) consists of three parts: (1) a broad definition stating that a recreational activity is "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure," (2) a list of 28 specific activities denominated as recreational, and (3) a second broad definition, directing that a recreational activity can be "any other outdoor sport, game or educational activity." We must determine whether Robert Sievert's conduct at issue in this case falls within this statutory definition.

Considering only the first, and broadest, part of the definition, "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure," it appears that Sievert's walk onto his neighbor's dock, an outdoor activity undertaken for pleasure or relaxation, could be construed as a recreational activity. Indeed, this broad definition, when isolated from the remainder of the statute, encompasses nearly every human activity that can be undertaken outdoors. Thus it cannot be isolated from the balance of the definition. It must be anchored to its statutory context and construed in light of the statute's list of specific recreational activities as well as the second broad definition.

It is immediately clear that walking to greet a neighbor is not one of the 28 activities listed in sec. 895.52(1)(g). Nor does walking to greet a neighbor fall within the broad definition of a recreational activity as "any other outdoor sport, game or educational activity." Thus, when read within the context of the entire subsection, Sievert's activity is not covered under the first, most general definition of recreational activity.

The fact that Sievert's activity is not enumerated as a recreational activity, nor falls under either of the general broad definitions of a recreational activity in sec. 895.52(1)(g) when read within the entire context of

that subsection, is not determinative of whether walking to greet a neighbor is a recreational activity under the statute. The legislature expressly declared that sec. 895.52(1)(g) was intended merely to provide examples of activities constituting recreational activities and that "where substantially similar circumstances or activities exist" the legislation should be construed liberally to protect the property owner. The declaration of legislative intent reads as follows:

> Sec. 1. Legislative intent. The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation would be liberally construed in favor of property owners to protect them from liability. . . . 1983 Wis. Act 418, sec. 1.

Although American Family does not explore whether walking onto another's property to communicate a greeting is an activity substantially similar to the activities listed in the statute or whether it is an activity undertaken in circumstances substantially similar to the circumstances of a recreational activity, we should nevertheless examine these questions to give effect to the legislature's expressed intent.[4] The

[4] The principle objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Green Bay Redevelopment Authority v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984).

"substantially similar" language in the legislature's statement of intent has been criticized for being broad and imprecise.[5] In *Linville v. City of Janesville,* 184 Wis. 2d 705, 516 N.W.2d 427 (1994), the court set forth a test for ascertaining whether an activity is substantially similar to the activities listed in the statute or whether an activity is undertaken in circumstances substantially similar to the circumstances of a recreational activity. We now analyze Sievert's conduct using the *Linville* test.

In *Linville,* the court stated that the test "considers the purpose and nature of the activity in addition to the [property] user's intent." *Id.* at 716. The test "requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. Thus, whether the injured person intended to recreate is not dispositive, . . . but why [the person] was on the property is pertinent." *Linville,* 184 Wis. 2d at 716, quoting *Linville v. City of Janesville,* 174 Wis. 2d 571, 579–80, 497 N.W.2d 465 (Ct. App. 1993).[6]

---

[5] For a critique of the legislature's statement of intent, see Stuart J. Ford, Comment, *Wisconsin's Recreational Use Statute: Towards Sharpening the Picture at The Edges,* 1991 Wis. L.R. 491, 502–505 (noting that "the broad language of the legislature's statement of intent is inconsistent with, and undermines, the great detail contained in the statute's provisions." *Id.* at 503).

[6] The activity at issue in *Linville* was an evening drive to the edge of a pond to look at fishing spots for the next day's fishing expedition. The plaintiff, one of the three people included in this activity, claimed she was at the pond against her will and, as such, could not have been undertaking a recreational activity. Applying this test, the court determined that the subjective intent of the plaintiff was not dispositive. The plain-

The *Linville* test does not rely exclusively on the characteristics of the property on which the activity is undertaken to determine whether an activity is recreational under the statute. Accordingly, we do not agree with American Family that the characteristics of the property on which Sievert was injured are determinative. Sievert's act of walking onto the Pierres' dock does not become a recreational activity merely because the Pierres' property was used by the Pierres for recreational (as well as other) activities. Nor was the activity recreational under the statute because it occurred on a dock, a structure ordinarily used for boating, fishing and swimming, all of which are identified as recreational activities in sec. 895.52(1)(g), Stats. 1991–92. As *Linville* teaches, the test to determine whether an activity is recreational focuses on the "nature of the activity," not the nature of the property. *Linville,* 184 Wis. 2d at 716.

Furthermore, the *Linville* test does not assess the activity of the property owner. Thus, we disagree with American Family's contention that Everett Pierre's activity at the time of the accident is significant in resolving whether Robert Sievert's activity was recreational under the statute. The delineation of an activity as recreational does not turn on the nature of the property owner's activity but rather on the nature of the property *user's* activity.

American Family suggests that because Sievert was not on the Pierres' dock to benefit the Pierres (he was not, for example, performing work for them, delivering a message, or rendering advice), Sievert must have been engaging in a recreational activity. The test

---

tiff was engaged in a recreational activity because the purpose of the trip was to identify potential fishing spots and she was at a recreational facility which was open for public use.

set out in *Linville* does not require us to categorize all activity that one might undertake on the land of another as either recreational or beneficial to the land owner. We decline to view the spectrum of human activity in the restrictive manner American Family suggests. Between the poles of "beneficial to the owner" and "recreation by the user" exist a wide variety of activities. Walking to greet a neighbor is one of them.

Considering the nature and purpose of Sievert's activity, as *Linville* instructs us to do, we conclude that Sievert was not engaging in a recreational activity within the meaning of sec. 895.52(1)(g) at the time the dock collapsed. The purpose of Sievert's activity was to greet his neighbor. His objective behavior and his testimony at trial signify that greeting Everett Pierre was his sole reason for being on the Pierres' dock. While we recognize that an activity can be both recreational under the statute and social, we conclude, as did the circuit court and court of appeals, that Robert Sievert's activity of walking to greet a neighbor does not fall within the statutory definition of recreational activity.

Finally, American Family suggests that the policy behind the statute is to encourage property owners, particularly owners of waterfront property, to open their property to the public for recreational activities and that declaring Sievert's activity to be a recreational activity would foster this policy. American Family's policy argument does not alter our analysis. We need not consider this argument because we have concluded that Robert Sievert's activity was not a recreational activity under sec. 895.52(1)(g). Sievert's conduct was not one of the enumerated activities in the statute. Under the *Linville* test it was not substantially similar to a recreational activity delineated in the stat-

ute nor was it undertaken in circumstances substantially similar to the circumstances of a recreational activity.

For the reasons set forth, the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.