Diane MEYER, Plaintiff-Appellant,†

v.

SCHOOL DISTRICT OF COLBY, Wausau Underwriters
Insurance Company, and Security Health Plan of Wis-
consin, Inc., Defendants-Respondents.

Court of Appeals

*No. 98–0482. Submitted on briefs May 21, 1998.—Decided
August 20, 1998.*

(Also reported in 585 N.W.2d 690.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Susanne M. Glasser* of *Bye, Goff & Rhode, Ltd.* of River Falls.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Mark W. Parman* of *Stilp and Cotton* of Wausau.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J. Diane Meyer appeals an order for summary judgment in favor of the School District of Colby which dismissed her suit for damages resulting

from personal injuries she sustained while watching a football game on school property. Meyer contends that the trial court erred in holding the District immune from liability under § 895.52, STATS., Wisconsin's recreational immunity statute. Because we conclude that the District is immune under the statute from liability for Meyer's injuries, we affirm the order granting summary judgment.

## BACKGROUND

The facts relevant to the recreational immunity issue are straightforward and not in dispute. Meyer watched her son's freshman football game from bleachers adjacent to the football field at Colby High School. The football field and the bleachers are on property owned by the District. The District charges no admission fee for spectators at freshman football games. Meyer claims that, as she descended the bleachers after the game, a portion of the bleachers broke, causing her to fall and sustain injuries.

Meyer sued the District, alleging that her injuries were caused by its negligence. The District moved for summary judgment, claiming it was immune from liability under § 895.52, STATS.[1] The trial court granted summary judgment, and Meyer appeals.

---

[1] Section 895.52(2), STATS., provides, in pertinent part:

(a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115 (2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for the death of, any

## ANALYSIS

We review a trial court's grant of summary judgment using the same methodology as the trial court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). That methodology is well known, and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97, 536 N.W.2d at 182; *see also* § 802.08(2), STATS.

Wisconsin's recreational immunity statute generally provides immunity to property owners from liability for injuries to persons engaging in recreational activities on the owner's property, unless the owner derives more than minimal monetary benefit from the recreational activity or maliciously fails to warn against unsafe conditions on the property. *See* § 895.52, STATS. This immunity applies to governmental entities as well as to private property owners. *See* § 895.52(1)(a) and (d). The statute broadly defines "recreational activity" as "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity." Section 895.52(1)(g).[2] The definition also provides a

---

injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

[2] Section 895.52(1)(g), STATS., provides:

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping,

non-exclusive list of twenty-eight exemplary recreational activities, and it explicitly includes "any other outdoor sport, game or educational activity." *See id.* The broad statutory definition of "recreational activity" also contains an exception, however: " 'recreational activity' . . . does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place." *Id.*

The parties do not dispute that the freshman football game Meyer attended as a spectator was an organized team sport activity, or that the school district was the sponsor of the activity and the owner of the land on which the game took place. Accordingly, the District, as sponsor-landowner, is not immune from liability for injuries sustained by participants in the game itself. *See Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 170 Wis. 2d 77, 85, 487 N.W.2d 77, 80 (Ct. App. 1992). The District did not charge an admission fee for spectators at the football game, and Meyer does not allege that the school district acted maliciously in failing to maintain the bleachers or warn of their unsafe condition, circumstances which would deprive the District of immunity under § 895.52(4)(a) and (b), STATS.

Thus, the sole issue in this appeal is whether the exception in the statutory definition of recreational

---

picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sport, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

activity for "any organized team sport activity sponsored by the owner of the property on which the activity takes place" extends to the spectators, and not just the participants, at such an event. This question requires that we interpret § 895.52, STATS. Statutory interpretation is a question of law which we decide de novo. *See Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996). The main goal of statutory interpretation is to discern the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25–26, 559 N.W.2d 563, 566 (1997) (citations omitted). We first look to the plain language of the statute. *See id*. If the plain language is ambiguous, we turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent. *See id*.

The plain language of paragraph (1)(g) does not indicate whether the exception for an organized team sport activity extends to spectators. By its terms, paragraph (1)(g) does not limit the exception only to participants in organized team sport activities, but neither does it explicitly include spectators at such activities. The District argues that we must infer from the language of § 895.52(4)(a), STATS., which explicitly refers to spectators, that the organized team sport activity exception in paragraph (1)(g) does not apply to spectators. We do not accept the District's argument on this point.

Under paragraph (4)(a), immunity does not extend to liability for "death or injury that occurs on property of which a governmental body is the owner at any event for which the owner charges an admission fee for spectators." Thus, had the District charged Meyer an admission fee to watch her son's football game, the District would presumably not be immune under the

518

statute from liability for her injuries. The District argues that since it charged no admission fee, we must construe paragraphs (1)(g) and (4)(a) together and conclude that its immunity is preserved. We need not necessarily infer from the existence of paragraph (4)(a), however, that the team sport exception in (1)(g) does not also apply to spectators at organized team sport activities, even when no admission fee is charged for spectators. The legislature has provided two separate exceptions in two different paragraphs of the statute, one for organized team sport activities, and one for events at which the owner charges an admission fee for spectators.

The two exceptions overlap when an admission fee is charged for spectators at team sport activities, such as when a school district charges an admission fee for spectators at varsity football games. But these exceptions also apply independently. The exception for events at which a governmental property owner charges an admission fee for spectators applies even when the event in question is not an organized team sport activity. For example, had Meyer been injured on the bleachers while attending a high school band concert for which the District charged spectators an admission fee, it would not be immune, even though no organized team sport activity was involved. Likewise, the organized team sport activity exception applies, at least with respect to participants in the activity, even when the property owner does not charge an admission fee for spectators. *See Hupf v. City of Appleton*, 165 Wis. 2d 215, 219–22, 477 N.W.2d 69, 71–72 (Ct. App. 1991). In short, these two exceptions function independently, and we do not infer from the existence of one that the scope of the other is therefore narrowed.

Because the language of the statute is ambiguous, we may turn to extrinsic aids to interpretation. The legislature has provided a statement of legislative intent to aid in the interpretation of the recreational immunity statute. It provides as follows:

> The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.

1983 Wis. Act 418, § 1. Although Wisconsin courts have often relied on this statement in determining whether a given activity was or was not a "recreational activity" under the statute,[3] it does not necessarily illuminate the legislative intent underlying the organized team sport activity exception. This is not a case in which we are called upon to interpret whether an activity is "substantially similar" to one of the examples of recreational activity cited in the statute so that it should be considered a recreational activity. Meyer's attendance as a spectator at the game, standing alone, is a recreational activity. *See Kostroski v. County of Marathon*, 158 Wis. 2d 201, 203, 462 N.W.2d 542, 543 (Ct. App. 1990) (attendance as a spectator at a ball game in the park is a recreational activity). Were it not

---

[3] *See, e.g., Linville v. City of Janesville*, 184 Wis. 2d 705, 714–15, 516 N.W.2d 427, 430 (1994).

for the ambiguity created because the event attended was an organized team sport activity sponsored by the property owner, and hence one that is specifically excepted from the definition, we would have no difficulty affirming the dismissal of Meyer's claim against the District. This case requires us to interpret the scope of an express, legislatively-created exception for organized team sport activities, and the statement of legislative intent calling for a broad definition of recreational activity is of limited assistance to our inquiry.

This court considered the scope of the organized team sport activity exception in *Hupf v. City of Appleton*, 165 Wis. 2d 215, 477 N.W.2d 69 (Ct. App. 1991). In *Hupf*, a participant in a city softball league at a city park was struck by a ball and injured. The participant was not playing softball at the time of his injuries, however. He was walking between diamonds when he was struck by the ball, which had been thrown by players warming up nearby. We acknowledged that under some circumstances, a walk in a city park would be an immune recreational activity. *See id.* at 220–21, 477 N.W.2d at 71–72. We concluded, however, that the legislature did not intend to create a "corridor of immunity from the ball field to the parking lot when the walk is inextricably connected to a non-immune activity." *Id.* at 221, 477 N.W.2d at 72. We held that a sponsoring landowner was not immune from liability for injuries to a participant in an organized team sport activity that occur on the landowner's property as the participant travels directly to and from the activity. *See id.*

Meyer's injury in this case is not as closely connected to the organized team sport activity sponsored by the District as was the softball player's off-field injury in *Hupf*. Unlike the injured plaintiff in *Hupf*, Meyer was not on the premises to participate in the

organized team sport activity. Also, her injury did not arise out of the team sport activity itself, or as in *Hupf*, out of an ancillary activity such as practicing or warming up; nor was the immediate cause of her injury attributable to the actions of any participant in the organized team sport activity she had come to watch. Because Meyer's injuries were not inextricably connected to the organized team sport activity itself, we conclude that *Hupf* is not controlling on the present facts.

■

Rather, we conclude that the organized team sport activity exception does not extend to spectators who are not participants in the excepted activity and whose injuries do not arise out of the team sport activity or the actions of participants in that activity. Thus, the District is immune from liability for Meyer's injuries under § 895.52, STATS.

Our conclusion is consistent with the purpose of the statute, while the opposite conclusion would not be. The purpose of § 895.52, STATS., is "to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence." *Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427, 430 (1994). Because organized team sport activities are excepted from the definition of recreational activity, those who sponsor organized team sport activities on land they own are not relieved by the recreational immunity statute of the duty to keep their premises safe for the participants in those activities. Under our holding in *Hupf*, the responsibilities of a sponsor-owner extend not only to the playing field itself, but to adjacent areas that must be used by team sport participants as they come and go. Here,

Meyer would have us take a further step by removing a sponsor-owner's immunity from liability for injuries to a non-participant which did not arise directly out of the conduct of the organized team sport activity. That result would create a disincentive for property owners to provide facilities for spectators, or even to permit spectators to enter their property to view organized team sport activities. Thus, Meyer's proffered interpretation would be contrary to the purpose of the recreational immunity statute.

Our interpretation also does not conflict with the apparent purpose of the legislative exception for organized team sport activities.[4] The legislature has expressly declared that those who sponsor organized team sport activities on their land should remain liable for injuries that result from those activities. By contrast, a landowner who permits his or her land to be used for organized team sport activities, without sponsoring those activities, is immune under the statute. *See Weina v. Atlantic Mut. Ins. Co.*, 179 Wis. 2d 774, 508 N.W.2d 67 (Ct. App. 1993); *also see Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 170 Wis. 2d 77, 85, 487 N.W.2d 77, 80–81 (Ct. App. 1992). Thus, the exception from immunity for sponsors of organized team sport activities only preserves exposure to liability a sponsor may otherwise face for injuries attributable to its negligence as a sponsor of the activity. We conclude

---

[4] The exception for owner-sponsored organized team sport activities was included in § 895.52(1)(g), STATS., when it was first enacted. *See* 1983 Wis. Act 418, § 5. Although not a part of 1983 Senate Bill 586 as introduced, the exception was added by amendment while the bill was in committee. The Legislative Reference Bureau drafting file contains no information which specifically identifies the concern intended to be addressed by the language of the exception.

that the legislature, by creating the exception, intended to ensure that a sponsor of an organized team sport activity would not acquire blanket immunity for its own negligence simply because the sponsor also owns the land on which the teams play.[5] The present result is consistent with this purpose, in that a sponsor's duties to participants in a team sport activity are not lessened, but neither are a sponsor's duties expanded to cover non-participants in the activity.

Finally, we note that our interpretation is consistent with the supreme court's direction that, in interpreting § 895.52(1)(g), STATS., our focus must be on the nature of the injured property user's activity, as opposed to the nature of the landowner's activity. *See Sievert v. American Family Mut. Ins. Co.,* 190 Wis. 2d 623, 632, 528 N.W.2d 413, 417 (1995). Meyer was spectating at a ball game, an activity previously held to be recreational within the meaning of the statute. Under the analysis employed in *Sievert,* Meyer's ability to recover for her injuries from the District should not turn on what type of activity, if any, the District was sponsoring at the time of her injury. Had Meyer been sitting on the bleachers to relax and watch a sunset, or to enjoy a free band concert sponsored by the District, there could be little dispute regarding the District's immunity from liability for her injuries under the stat-

---

[5] We also note that, without the exception for organized team sport activities, anomalous outcomes would be possible on claims of liability for negligence on the part of team sport sponsors, depending solely on the location of a team sport event. For instance, absent the exception, one could argue that the Colby School District is potentially liable for injuries sustained by its athletes at away games, but that it is immune from suit for injuries arising under identical circumstances but occurring on the home field.

ute. Under the *Sievert* analysis, a different outcome should result only from a difference in the nature and purpose of Meyer's activity and not from any difference in the District's activity.

As with any grant of immunity from liability, the result of applying the recreational immunity statute may seem harsh in an individual case, and it may seem incompatible with outcomes based on closely similar facts. The legislature, however, has determined that the benefit of increased access to lands for recreational purposes, which presumably flows from a liberally construed recreational immunity statute, outweighs the cost of harsh or inconsistent results on individual liability claims. We have stated above our conclusion that the legislature's directive to liberally construe the term "recreational activity" does not directly assist in illuminating the contours of the sole exception contained in the statutory definition. We also note, however, that our present result is consistent with past decisions of the supreme court and this court which have expressed the legislative intent of § 895.52, STATS., more expansively. *See Linville*, 184 Wis. 2d at 715, 516 N.W.2d at 430 ("[C]ourts must liberally construe the statute in favor of property owners."); *Weina*, 179 Wis. 2d at 779, 508 N.W.2d at 69 ("[T]he legislature's directive [is] to liberally construe the recreational statute in favor of a property owner's immunity.").

## CONCLUSION

For the reasons outlined above, the trial court's order granting summary judgment in favor of the District is affirmed.

*By the Court.*—Order affirmed.