Diane MEYER, Plaintiff-Appellant-Petitioner,

v.

SCHOOL DISTRICT OF COLBY, Wausau Underwriters Insurance Company and Security Health Plan of Wisconsin, Inc., Defendants-Respondents.

Supreme Court

*No. 98–0482. Oral argument May 5, 1999.—Decided June 18, 1999.*

(Also reported in 595 N.W.2d 339.)

For the plaintiff-appellant there were briefs by *Susanne M. Glasser* and *Bye, Goff & Rohde, Ltd., River Falls* and oral argument by *Susanne M. Glasser.*

For the defendant-respondent there were briefs by *Mark W. Parman* and *Stilp and Cotton*, Wausau and oral argument by *Mark W. Parman.*

Amicus curiae brief was filed by *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay for the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Meyer v. School District of Colby*, 221 Wis. 2d 513, 585 N.W.2d 690 (Ct. App. 1998). The court of appeals affirmed an order of the Circuit Court for Clark County, Michael W. Brennan, Judge, for summary judgment dismissing Diane Meyer's complaint for damages.

¶ 2. The only issue presented is whether the School District of Colby is immune from liability under Wisconsin's recreational immunity statute, Wis. Stat.

§ 895.52 (1993–94),[1] for injuries Diane Meyer, the plaintiff, sustained while attending a junior varsity football game on Colby High School grounds. More specifically, this issue involves the question whether under Wis. Stat. § 895.52(1)(g) the plaintiff's activity at the time of injury comes within the statutory exception to the definition of "recreational activity." Section 895.52(1)(g) provides that recreational activity "does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place."

¶ 3. The circuit court held that at the time of her injury the plaintiff was engaged in the activity of being a spectator and that this activity falls within the definition of recreational activity and not within the organized team sport exception. The circuit court therefore granted summary judgment in favor of the School District, as well as Wausau Underwriters Insurance Company, the School District's liability carrier, and dismissed the complaint.[2]

¶ 4. The court of appeals affirmed the order of the circuit court and held that "the organized team sport activity exception [Wis. Stat. § 895.52(1)(g)] does not extend to spectators who are not participants in the excepted activity and whose injuries do not arise out of the team sport activity or the actions of participants in that activity." *Meyer*, 221 Wis. 2d at 522.

¶ 5. We reverse the decision of the court of appeals and hold that the School District is not immune from liability to this plaintiff. We conclude

---

[1] All subsequent references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[2] The plaintiff also sued Security Health Plan of Wisconsin, Inc., her health care provider. Security Health Plan did not participate in the summary judgment proceedings.

706

that the organized team sport activity exception of Wis. Stat. § 895.52(1)(g) extends to spectators whose injuries do not arise out of the team sport activity or out of the actions of participants in that activity. We therefore remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

I

¶ 6. For purposes of summary judgment, the facts are not in dispute. On the evening of September 9, 1996, the plaintiff, Diane Meyer, attended a football game at the Colby High School football field to watch her son, Daniel, play on the junior varsity team. The plaintiff sat in the top row of the bleachers adjoining the football field to watch the game. The football field and the bleachers are part of the Colby High School grounds and maintained by the School District. After the game ended, the plaintiff was descending from her seat when one of the wooden bleachers suddenly broke, causing her to fall and sustain injury.

¶ 7. On July 28, 1997, the plaintiff filed a complaint alleging that her injuries from this fall were proximately caused by the negligence of the School District.[3] The School District's answer asserted the affirmative defense of immunity under Wis. Stat. § 895.52, the recreational immunity statute.[4] On October 30, 1997, the School District moved for summary judgment and dismissal of the complaint. The motion

[3] The complaint also alleged a violation of the Safe Place Statute, Wis. Stat. § 101.11, and stated that the District had been duly served with a notice of claim and a claim as required by Wis. Stat. § 893.80.

[4] Defendant Security Health Plan of Wisconsin, Inc., also filed an answer, as well as a counterclaim and a cross-claim for purposes of asserting a right to subrogation.

was granted by the circuit court. The court of appeals affirmed the order of the circuit court, and the plaintiff seeks review in this court.

## II

¶ 8. This court reviews a summary judgment using the same methodology as the circuit court. *State ex. rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 591–92, 547 N.W.2d 587 (1996). The methodology of summary judgment is set forth in Wis. Stat. § 802.08(2), which provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## III

¶ 9. The issue presented in this case is one of statutory interpretation. Interpretation of a statute and application of a statute to undisputed facts are ordinarily questions of law that this court considers independent of the decisions of the circuit court and court of appeals, but benefiting from their analyses.

¶ 10. We must determine whether the plaintiff's suit is barred by the recreational immunity statute, which limits an owner's liability for an injury to someone engaging in a recreational activity on the owner's property.[5] Because the line between recreational and nonrecreational activities is difficult to draw, the issue

---

[5] Wis. Stat. § 895.52(2) provides, in relevant part, as follows:

of whether an injured party was engaged in a recreational activity as defined by the statute is litigated with some frequency.[6] The court of appeals wisely concluded in this case that "as with any grant of immunity from liability, the result of applying the recreational immunity statute may seem harsh in an individual case, and it may seem incompatible with outcomes based on closely similar facts." *Meyer*, 221 Wis. 2d at 525.

¶ 11. The statutory definition of recreational activity explicitly provides that recreational activity "does not include any organized team sport activity sponsored by the owner of property on which the activity takes place." Wis. Stat. § 895.52(1)(g).[7]

(2) **NO DUTY; IMMUNITY FROM LIABILITY.** (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property. . . .

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property . . . .

[6] For a list of several cases, *see Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 627 n.2, 528 N.W.2d 413 (1995).

[7] The recreational immunity statute defines "recreational activity" in Wis. Stat. § 895.52(1)(g), as follows:

(g) "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing,

709

¶ 12. No one disputes that the junior varsity football game was an organized team sport activity, that the School District was the sponsor of the activity[8] or that the School District was the owner of the property on which the game took place.[9] The sole issue in this case is whether the organized team sport activity exception extends to spectators at an event or whether it is limited to athletes and others who directly participate in an organized team sport. By its terms, Wis. Stat. § 895.52(1)(g) neither includes nor excepts spectators.

¶ 13. No one disputes that the plaintiff's attendance at the junior varsity football game, in the absence of the organized team sport activity statutory exception, would be a recreational activity. The case law is clear that a spectator who attends a recreational activity is engaged in a recreational activity. Generally, "attendance. . .as a spectator at a ball game in the park qualifies as recreational activity." *Kostroski v. County*

rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, **but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.** [Emphasis added.]

[8] The court of appeals has held that a city was a "sponsor" within the meaning of the organized team sport exception when it took team registrations, maintained the grounds and provided umpires, score keepers, bases and softballs. *Hupf v. City of Appleton*, 165 Wis. 2d 215, 222, 477 N.W.2d 69 (Ct. App. 1991).

[9] The recreational immunity statute defines "owner" to include a governmental body, which in turn includes a municipal body, such as the School District. *See* Wis. Stat. § 895.52(1)(a) & (d).

710

*of Marathon*, 158 Wis. 2d 201, 203, 462 N.W.2d 542 (Ct. App. 1990).[10]

¶ 14. The School District argues that our interpretation of Wis. Stat. § 895.52(1)(g) in this case should end at this point. The School District contends that because the plaintiff is a spectator, her activity is recreational and the School District is therefore immune from liability. The focus, according to the School District, is on the plaintiff's activity, not on the activity of others. According to the School District, it makes no difference what activity was (or was not) taking place on the field; what matters, argues the School District, is the plaintiff's activity as a spectator. Therefore, the School District asserts that the plaintiff cannot bootstrap her recreational activity as a spectator into the organized team sport exception just because she happened to be a spectator at an organized team sport activity.

¶ 15. The court of appeals agreed with the School District's analysis and concluded that because the plaintiff in this case had never been a participant in the organized team sport activity, her injuries were "not inextricably connected to the organized team sport activity itself," and her activity therefore does not fall within the organized team sport exception to recreational activity.[11] *Meyer*, 221 Wis. 2d at 522.

---

[10] At oral argument, counsel for the School District acknowledged a factual distinction between *Kostroski* and this case and agreed that a company softball game or "pick-up game" would not qualify as an organized team sport because it is an individual, single event.

[11] The court of appeals distinguishes this case from *Hupf*, 165 Wis. 2d 215, in which a softball player who was struck in the eye by a softball as he was leaving the park was held to be within the organized team sport exception. Thus the court of

¶ 16.   In its interpretation of the plaintiff's activity and the organized team sport exception, the court of appeals relied on *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 632, 528 N.W.2d 413 (1995). In *Sievert*, the injured party walked onto his neighbor's dock to say hello. Although the dock was used for recreational activities and the owner may have been engaged in recreational activities at the time, the *Sievert* court held that the injured party was not himself engaging in recreational activities. The *Sievert* court looked to the nature of the injured person's activities under the facts of that case and concluded that the "the delineation of an activity as recreational does not turn on the nature of the property owner's activity but rather on the nature of the property *user's* activity." *Sievert*, 190 Wis. 2d at 632.

¶ 17.   Under its reading of *Sievert*, the court of appeals focused in this case solely on the nature of the plaintiff's activity and gave no consideration to the nature of the School District's activity. This reading of *Sievert* is too narrow.

¶ 18.   The *Sievert* court relied on the test set forth in *Linville v. City of Janesville*, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), for determining whether an injured person was engaging in a recreational activity at the time of injury. Determining whether an injured person is engaging in a recreational activity requires examination of "all aspects of the activity," including "the intrinsic nature, purpose and consequence of the activity." *Linville*, 184 Wis. 2d at 716 (quoting *Linville v. City of Janesville*, 174 Wis. 2d 571, 579–80, 497 N.W.2d 465 (Ct. App. 1993)). Furthermore, "why [the injured

appeals has allowed an athlete exiting a ballpark to recover for injuries, but in its decision in this case did not allow a spectator to be covered.

person] was on the property is pertinent." *Id.* As the *Sievert* court explained, a court should not rely exclusively on the characteristics of the property; the characteristics of the property on which an activity is undertaken are not determinative of the issue. The *Sievert* court did not, however, hold that the nature of the property on which an activity is undertaken should never be considered.

¶ 19. Adhering to the *Sievert-Linville* analysis in this case involving the organized team sport exception in Wis. Stat. § 895.52(1)(g), we must examine not only the plaintiff's reason for being on the property but also the activity taking place on the property. In other words, we must consider not only that the plaintiff was a spectator but also the activity at which the plaintiff was a spectator. If in this case the plaintiff had been sitting on the bleachers to watch a sunset or to enjoy a free band concert sponsored by the School District, the School District would not be liable for her injuries. But the plaintiff in this case was watching an organized team sport activity, an activity that is excepted as a recreational activity by § 895.52(1)(g).

¶ 20. If the legislature had intended to limit the organized team sport activity exception to team players it could have done so expressly. But nothing in the statute limits the exception to team players as the School District argues; nothing in the statute indicates that the various classes of people involved in an organized team sport activity, such as players, coaches, umpires, and spectators, are to be treated differently. Further, there is nothing in the legislative history, the case law or the decision of the court of appeals in this case that explains why an owner who sponsors an organized team sport activity should be liable to some persons but not to others. The court of appeals focused

on the legislature's intention to immunize owners who open their property to the public for recreational activities. The court of appeals placed less emphasis on the legislature's equally important and expressed objective that owners of property who sponsor organized team sport activities be required to exercise ordinary care and be liable for negligence.

¶ 21. Adhering to the language of Wis. Stat. § 895.52(1)(g) and to the test set forth in the *Seivert-Linville* cases to determine whether an injured person's activity is a recreational activity, we conclude that the plaintiff falls within the organized team sport activity exception under § 895.52(1)(g) and that the School District is not immune from the plaintiff's suit.

¶ 22. Our reading of Wis. Stat. § 895.52(1)(g) comports with the policy impetus behind recreational immunity legislation, which was to encourage owners to open their property to persons engaging in recreational activities because there was an insufficient amount of property to meet an increasing demand for recreational activity.[12] Because there is no shortage of facilities for organized team sport activities that an owner sponsors, no reason exists to immunize owners who sponsor organized sports activities on their property from liability for not exercising ordinary care in the maintenance of those facilities.

¶ 23. Unlike property that might be closed to the public if no immunity were provided to the owner, organized team sport facilities are constructed to

---

[12] *See* Comment, *Wisconsin Recreational Use Statute: Towards Sharpening the Picture at the Edges*, 1991 Wis. L. Rev. 491, 504 (1991). *See also Silingo v. Village of Mukwonago*, 156 Wis. 2d 536, 544, 458 N.W.2d 379 (Ct. App. 1990); *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 489, 431 N.W.2d 696 (Ct. App. 1988).

attract the public to the owner's sponsored events. Therefore, the statute's policy impetus of encouraging owners to open their otherwise closed property for recreational activities is generally inapplicable to property on which an owner sponsors an organized team sport activity.

¶ 24. The School District contends that the position we adopt today runs counter to the legislative intent stated in 1983 Wis. Act 418, which it reads as limiting liability of owners of property and liberally construing the term recreational activity in favor of owners. The applicable portion of that enactment provides the following:

> While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.

1983 Wis. Act 418, § 1.

¶ 25. We agree with the court of appeals that the legislative statement of intent in 1983 Wis. Act 418, § 1, calling for a broad interpretation of the term "recreational activity" is of limited assistance in this case. This case does not ask us to interpret whether an activity is substantially similar to one of the examples of recreational activity enumerated in the statute. Instead, this case requires us to interpret the scope of the express, legislatively created exception for an organized team sport activity.

¶ 26. According to the School District, reading Wis. Stat. § 895.52(4)(a) and § 895.52(1)(g) together

715

demonstrates that a governmental body loses immunity with respect to spectators only when it charges an admission fee for an event. Wisconsin Stat. § 895.52(4)(a) provides that the recreational immunity statute does not limit the liability of a governmental body for "injury that occurs on property of which a governmental body is the owner at any event for which the owner charges an admission fee for spectators."[13] Because § 895.52(4)(a) provides that a governmental body charging admission to spectators is liable to spectators, the School District argues that the inference is that a governmental entity *not* charging an admission fee to spectators should be immune from liability.

¶ 27.   The School District asserts that the legislature intended this inference because when admission fees are charged, an owner can control who comes on the property. On the other hand, when no admission fee is charged an owner cannot control who attends an event and should therefore be immune from liability.

¶ 28.   We agree with the court of appeals that the immunity provision of Wis. Stat. § 895.52(4)(a) does not require the inference urged by the School District.

---

[13] In its entirety, Wis. Stat. § 895.52(4) provides the following:

(4) LIABILITY; PROPERTY OF GOVERNMENTAL BODIES OTHER THAN THE STATE. Subsection (2) does not limit the liability of a governmental body other than the state or any of its agencies or of an officer, employe or agent of such a governmental body for either of the following:

(a) An injury that occurs on property of which a governmental body is the owner at any event for which the owner charges an admission fee for spectators.

(b) An injury caused by a malicious act or by a malicious failure to warn against an unsafe condition of which an officer, employe or agent of a governmental body knew, which occurs on property designated by the governmental body for recreational activities.

The legislature has provided these two separate and different exceptions in two different parts of the statute, one for organized team sport activities and one for events at which the owner charges an admission fee for spectators. The exception for events at which a governmental property owner charges an admission fee for spectators applies even when the event in question is not an organized team sport activity. For example, had the plaintiff been injured while attending a band concert for which the School District charged spectators an admission fee, the School District would not be immune. The two exceptions function independently. We need not, and do not, infer from the existence of one that the scope of the other is narrowed.

¶ 29.   In sum, we hold that the plaintiff's attendance at the junior varsity football game falls within the organized team sport activity exception delineated in Wis. Stat. § 895.52(1)(g) and that the plaintiff was not engaged in a recreational activity within the meaning of the recreational immunity statute. Accordingly we hold that the School District is not immune from the plaintiff's suit. We reverse the decision of the court of appeals and remand the cause for reinstatement of the complaint.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.