IN the MATTER OF the ESTATE OF Donald W.
ANDERSON, Deceased: Donald A.
ANDERSON and Robbin Rae Jones,
Appellants,

v.

Jerry Anne ANDERSON, Personal Representative
of the Estate 'of Donald W. Anderson,
Respondent.

Court of Appeals

*No. 88–0295. Submitted on briefs August 9, 1988.—Decided
October 12, 1988.*

(Also reported in 432 N.W.2d 932.)

83

For the appellants the cause was submitted on the briefs of *Hiller & Frank, S.C.* by *Richard J. Rakita* and *Marla S. Schneiderman* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Raasch, Fleming & Reidenbach, S.C.* by *F.E. Reidenbach* and *Ralph W. Raasch* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   This appeal involves the application of Wisconsin's nonademption statute, sec. 853.35, Stats. Under common law ademption, if specific property given by will was sold or destroyed before the testator died, the gift failed because that property was "no longer part of the testator's estate at the time of his death." *Estate of Atkinson,* 19 Wis. 2d 272, 274, 120 N.W.2d 109, 110 (1963). Section 853.35, Stats., at-

tempts to preserve at least a portion of the gift's value for the specific beneficiary in certain situations, despite destruction or sale of the gift. The statute, however, "is inapplicable if the intent that the gift fail under the particular circumstances appear [sic] in the will, or if the testator during his lifetime gives property to the specific beneficiary with the intent of satisfying the specific gift." Sec. 853.35(1), Stats.

## I.

The facts underlying this appeal are not in dispute. On March 5, 1985, Donald W. Anderson (Anderson) executed a will, which bequeathed his stock in National Electric Service, Inc. as follows: fifty percent to his wife, Jerry Anne Anderson, twenty-five percent to his son, Donald A. Anderson; and twenty-five percent to a daughter, Robbin Rae Jones.

Anderson sold the National Electric Service stock for $350,000 in June 1985, three and one-half months after he executed his will. He received $275,000 at closing, together with a $75,000 promissory note at eight percent interest and monthly payments of $1,250. When Anderson died on December 5, 1985, there was an unpaid balance on the purchase price of $67,500.

Before Anderson died, he put the $275,000 cash proceeds from the stock sale into a joint savings account that he shared with his wife. He used part of this money as follows: $10,000 to purchase an annuity on his wife's life, with himself as the beneficiary; $100,000 to purchase an annuity on his life, with his wife as beneficiary; and $48,722.22 to purchase a United States Treasury Bill, jointly held by him and his wife.

The trial court entered judgment determining, as material to this appeal, that the couple's jointly held property became solely owned by Anderson's wife by virtue of survivorship, that the bequests of National Electric Service stock were not adeemed as to any of the specific beneficiaries; that the unpaid proceeds from the stock sale were to be apportioned according to the specific bequests in the will; that the expenses attributable to and the taxes arising from the stock sale were "an estate expense for that part of the purchase price paid during [Anderson's] lifetime"; and that the expenses attributable to, and the taxes arising from, the balance of the purchase price paid after Anderson's death were to be prorated against each specific beneficiary in proportion to his or her share of the specific bequest.

Anderson's son and daughter appeal. First, they contend that the specific bequests to Anderson's wife adeemed and that, accordingly, she should not share in the balance due from the stock sale that was unpaid at his death. Second, they contend that they are entitled to general pecuniary legacies from the estate in amounts equal to their share of the stock's value. Third, they contend that the expenses attributable to, and the taxes arising from, the stock sale proceeds that were paid before defendant's death should not have been considered as estate expenses. Finally, they challenged the attorney's and personal representative's fees approved by the court. We discuss these issues seriatim.

## II.

■

A.   Section 853.35, Stats., abolishes the common law doctrine of ademption in specified situations and

subject to certain conditions unless the testator intended otherwise. Sec. 853.35(1), Stats. As reflected in the comment to sec. 853.35, Stats., sec. 26, ch. 339, Laws of 1969, the statute was designed to correct what the drafting committee felt were inequities imposed by the common law. Under the situations covered by the statute, ademption of a specific bequest or devise is now an exception requiring specific testator intent.

Although the statute is silent as to who has the burden of proving the testator's intent, the burden of proving facts that would remove circumstances from a statute's purview is on the party seeking that result. *Garcia v. Chicago & N.W. Ry.*, 256 Wis. 633, 638–39, 42 N.W.2d 288, 290–91 (1950). This rule applies here. A party who contends that sec. 853.35, Stats., does not apply and that, therefore, there was an ademption, must prove that the testator intended that the specific gift fail. This rule is consistent with the common law principle that placed the burden of proof on the party claiming that a gift adeemed. *Will of Cramer,* 183 Wis. 525, 528, 198 N.W. 386, 387 (1924); 6 W. Bowe, and D. Parker, *Page on Wills* sec. 54.26 (rev. ed. 1962). Accordingly, Anderson's son and daughter have the burden of proving that Anderson intended that his bequest of the stock to his wife adeem, either by its sale or by his subsequent treatment of the proceeds.

After holding an evidentiary hearing, the trial court issued a written decision and found:

> There is nothing in the record to evince an intent on the part of the decedent to satisfy a specific gift to anyone. No money was paid to the wife as her sole property. All deposits included the name of the decedent. He used the proceeds. He made the

purchases. All of the monies were under his control. None of the above evinces an intent to satisfy a specific gift.

Anderson's son and daughter have not demonstrated that their father intended that the gift of stock to his wife adeem. The trial judge's factual findings are conclusively supported by the record and are not, by any stretch of the imagination, "clearly erroneous." They are, therefore, binding on this court. Rule 805.17(2), Stats. The conclusion that the gift of the stock did not adeem must be affirmed.

B.  Anderson's son and daughter contend that they are entitled to a general pecuniary legacy from the estate in an amount equal to their share of the stock's value. They are entitled to the legacy, but only if the estate has sufficient funds to pay that legacy. *See* Sec. 863.11, Stats. Significantly, Wisconsin's nonademption statute does not entitle the specific beneficiary to traceable proceeds of a specific gift sold during the testator's life. See Ky. Rev. Stat. Ann. sec. 394.360(1)(Baldwin), which permits tracing. *See Westover's Executrix v. Westover,* 233 S.W.2d 105, 107 (Ky. Ct. App. 1950).

Section 853.35(3), Stats., provides, in pertinent part:

> If property which is the subject of a specific gift is sold by the testator within 2 years of his death, the specific beneficiary has the right to: (a) any balance of the purchase price unpaid at the time of death (including any security interest in the property and interest accruing before death), if part of the estate, with the incidents of the specific gift; and (b) a general pecuniary legacy equivalent to the

amount of the purchase price paid to the testator within one year of his death. Acceptance of a promissory note of the purchaser or a 3rd party is not considered payment, but payment on the note is payment on the purchase price; and for purposes of this section property is considered sold as of the date when a valid contract of sale is made.

■ Thus, Anderson's son and daughter have the right to their share of the unpaid balance of the stock's purchase price (25% of $67,500, respectively) and a general pecuniary legacy for their share of the amount paid to Anderson during his lifetime (25% of $275,000 plus $7,500, respectively). It appears, however, that the estate does not have enough money to fund the general pecuniary legacy and Anderson's son and daughter have failed to demonstrate the contrary. The trial court's judgment in this regard must be affirmed.

C.  Anderson's son and daughter challenge the trial court's apportionment of expenses and taxes as they relate to the sale proceeds received before Anderson's death. Specifically, as noted, they assert that his wife, not the estate, should be responsible for the expenses and taxes attributable to the money received from the sale of stock before Anderson died. The apportionment is governed by statute and, accordingly, is a matter that we must independently determine. *See DILHR v. Coatings, Inc.,* 126 Wis. 2d 338, 343, 376 N.W.2d 834, 837 (1985). Section 853.35(7), Stats., provides:

> Throughout this section the amount the specific beneficiary receives is reduced by any expenses of the sale or of collection of proceeds of ... sale ... and by any amount by which the income tax of the

decedent or his estate is increased by reason of *items covered by this section.* Expenses include legal fees paid or incurred. [Emphasis added.]

The "items covered by this section" are the subjects of a specific gift that would adeem if the statute did not exist. As the price of preserving the gift's value (or as much of the value as the estate's assets will permit) for the specific beneficiary, sec. 853.35(7), Stats., burdens "the amount the specific beneficiary receives" with the expenses attributable to the property's sale, even if the beneficiary does not receive the total amount of the gift. The statute thus attempts to place the specific beneficiary in the same position *vis a vis* the estate and the other beneficiaries as he or she would have been if the decedent had not sold the property before he died. Under that circumstance, the specific beneficiary would receive the property pursuant to the specific bequest and, at a later sale, would naturally pay any expenses and taxes attributable to that sale; the costs would not be charged against the estate.[1]

---

[1] A simple example will illustrate the operation of sec. 853.35(7), Stats. There is a specific bequest to A of property worth $10,000 and a general bequest to B of $20,000. The testator sells the property within a year of his death and there are $3,000 in expenses and taxes attributable to the sale. At the testator's death, the estate has distributable assets of $30,000. If the specific gift does not adeem, A, the specific beneficiary, receives $7,000 ($10,000 minus $3,000), which places him in the same position he would have been in had he received the property and then sold it. B receives his $20,000. If the expenses were charged to the estate, however, only $27,000 would be available for distribution ($30,000 minus $3,000). A, the specific beneficiary, given priority over B by secs. 853.35 and 863.11, Stats., would receive $10,000 and B would receive only $17,000; the expenses of the sale would be shifted to B. Section 853.35(7) prevents that result.

In this case, Anderson's wife would receive fifty percent from the sale of the stock and his son and daughter would receive twenty-five percent each, if there were sufficient assets in the estate. There is not enough money in the estate to give them full value. They will, however, receive something. Section 853.35(7) requires that the amounts received by each be "reduced by any expenses of the sale or of collection of proceeds of ... sale ... and by any amount by which the income tax of the decedent or his estate is increased by reason of items covered by this section." That is the statute's clear mandate and must be enforced. *See Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987). We reverse the trial court's determination that the taxes and expenses attributable to the portion of the stock's purchase price paid during Anderson's life are charges against the estate.

D.   The son and daughter next contend that the amounts allowed by the trial court for personal representative and attorneys' fees are excessive. Since the amounts allowed by the trial court are not supported by the record, we reverse and remand for further proceedings.

The court awarded $3,600 to Anderson's wife as personal representative. This was more than permitted by statute. Section 857.05(2), Stats., provides:

> Subject to the approval of the court the personal representative shall be allowed for his or her services commissions computed on the inventory value of the property for which the personal representative is accountable less any mortgages or liens plus net principal gains in the estate proceedings at the rate of 2%, and such further

sums in cases of unusual difficulty or extraordinary services as the court determines reasonable.

■ The trial court's approval of fees for a personal representative will not be set aside absent an abuse of discretion. *In re Estate of Astrach,* 25 Wis. 2d 331, 335, 130 N.W.2d 878, 880 (1964). The failure to articulate reasons for a discretionary action is an abuse of discretion. *Conrad v. Conrad,* 92 Wis. 2d 407, 414–15, 284 N.W.2d 674, 677–78 (1979). Although we must uphold a discretionary decision if there are facts of record to support it, even though the trial court's reasons are not given, *id.* at 415, 284 N.W.2d at 678, there is no basis in the record from which we can conclude that this was a case of "unusual difficulty" or that Anderson's wife rendered "extraordinary services" so that a fee in excess of two percent was reasonable.

As to the trial court's allowance for $10,000 in attorneys' fees, sec. 851.40(1), Stats., provides for "just and reasonable" compensation to attorneys who perform services for an estate. Section 851.40(2) establishes criteria the court must consider in determining the reasonableness of attorney's fees:

> Any personal representative, heir, beneficiary under a will or other interested party may petition the court to review any attorney's fees which is subject to sub. (1). If the decedent died intestate or the testator's will contains no provision concerning attorney fees, the court shall consider the following factors in determining what is a just and reasonable attorney's fee:
> (a) The time and labor required.
> (b) The experience and knowledge of the attorney.

(c) The complexity and novelty of the problems involved.

(d) The extent of the responsibilities assumed and the results obtained.

(e) The sufficiency of assets properly available to pay for the services, except that the value of the estate may not be the controlling factor.

The record does not demonstrate that the trial court considered these factors in approving the award. Although this court exercises independent review of a trial court's determination of attorneys' fees, *In re Estate of Tierney,* 70 Wis. 2d 438, 443, 234 N.W.2d 357, 359 (1975), there must be facts of record from which that determination can be made. The record here, however, gives us no basis upon which to set reasonable attorneys' fees. Accordingly, the matter must be remanded to the trial court to make a determination of reasonableness under sec. 851.40(2), Stats.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.