Kathleen RINTELMAN and David Rintelman,
Plaintiffs-Appellants,

AMERICAN NATIONAL LIFE INSURANCE COMPANY OF
TEXAS, a foreign insurance corporation,
Involuntary-Plaintiff,

v.

BOYS & GIRLS CLUBS OF GREATER MILWAUKEE, INC.,
a Wisconsin non-stock corporation, and
St. Paul Fire and Marine Insurance Company,
a foreign insurance corporation,
Defendants-Third-Party Plaintiffs-Respondents,†

CAPITOL INDEMNITY CORPORATION,
a Wisconsin insurance corporation,
Defendant-Respondent,†

v.

OZAUKEE COUNTY NAACP, n/k/a NAACP of
Mequon, Third-Party Defendant-Respondent.

Court of Appeals

*No. 2004AP2669. Oral argument October 4, 2005.
—Decided October 25, 2005.*

2005 WI App 246

(Also reported in 707 N.W.2d 897.)

† Petition to review denied 1-20-06.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Kenneth R. Nowakowski*, of *Whyte, Hirschboeck, Dudek, S.C.*, of Milwaukee. There was oral argument by *Kenneth R. Nowakowski*.

On behalf of the defendant-respondent Capitol Indemnity Corporation, the cause was submitted on the brief of *James S. Smith*, of *Steinhafel, Smith & Rowen, S.C.*, of Brookfield. There was oral argument by *Wendy G. Gunderson*.

On behalf of the defendants-third-party plaintiffs-respondents Boys & Girls Clubs of Greater Milwaukee, Inc. and St. Paul Fire & Marine Insurance Company, the cause was submitted on the brief of *Stephen W. Pasholk*, of *Law Offices of Michael J. Hogan*, of Brookfield. There was oral argument by *Stephen W. Pasholk*.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J.   Kathleen Rintelman and her husband David Rintelman appeal the summary judgment

dismissing their claims against the Boys & Girls Clubs of Greater Milwaukee, Inc., and its insurer, St. Paul Fire and Marine Insurance Company, and the Ozaukee County NAACP, n/k/a NAACP of Mequon, and its insurer, Capitol Indemnity Corporation. The Rintelmans' claims stem from Mrs. Rintelman's fall while she was helping to chaperon Unifest 2000, an educational retreat for young adults. Unifest 2000 was sponsored by the NAACP of Mequon, and took place from February 5 through February 7, 2000, at Camp Whitcomb/Mason owned by the Boys & Girls Clubs of Greater Milwaukee. The trial court ruled that the Rintelmans' claims were barred by Wis. Stat. § 895.52, Wisconsin's recreational-use-immunity statute. We reverse.

## I.

¶ 2. According to the uncontested material in the Record, Camp Whitcomb/Mason is a rural camping and retreat facility in north-central Waukesha County, near Hartland, Wisconsin. It "[s]its on 306 acres on Lake Keesus with 1,800 feet of lake frontage," and has "41 buildings" on the property, as well as "12 miles of hiking trails, two dining halls, an in-ground/heated swimming pool, arts & crafts lodge, sand volleyball courts, basketball courts, an educational farm, a professional soccer complex, archery ranges, a nature center, an outdoor amphitheater, an indoor climbing wall, and a ropes/challenge course." It was founded in 1887, and is described in camp literature as "the oldest Boys & Girls Club Camp in the United States." According to that literature, some 25,000 persons use the camp every year, "almost 5,000 of whom are Boys & Girls Clubs members, hailing from economically challenged families in Milwaukee's central city, and over 11,000 of whom are Waukesha County residents." Camp Whitcomb/Mason's

"mission" is described as "provid[ing] imaginative, outdoor education and recreation experiences in which youth develop skills, responsibility and respect for others." (Italics omitted.)

¶ 3.  Unifest 2000 is described in its literature as a "school field trip" designed to make the experience "valuable and positive" for the participating youngsters, who were asked to not only "come with an open mind, an open heart and willingness to fully participate," but also to bring appropriate warm clothing, sleeping bags, flashlights, and, if the youngsters wanted, cameras, sleds or saucers, and ice skates. The written schedule for Unifest 2000 indicated that the activities would "include, 'icebreakers', [*sic* as to placement of the comma] cooperative games and crafts, large group presentations, small group discussions, open mic nights, dancing and recreation." The material explains:  "Though most activities will be held indoors, there will be opportunity to be outdoors, to hike, ice skate, and sled, weather permitting." Two Unifest 2000 participants testified at their depositions that most of the activities took place indoors.

¶ 4.  According to the Rintelmans' complaint, while at Camp Whitcomb/Mason for Unifest 2000, Mrs. Rintelman and the others in the Unifest 2000 group "participated in programs and used the showers and bathrooms" in the camp's Friendship Lodge. Their complaint alleges that she fell and was injured when they had to move to a different building at the camp on the last day of Unifest 2000 because "the showers and bathrooms in Friendship Lodge were no longer working":

> On February 7, 2000, at approximately 9:00 a.m., the Unifest conference participants were directed by a

399

representative of Camp Whitcomb/Mason and/or Boys
& Girls Clubs to walk from Friendship Lodge to an-
other lodge using a designated path selected by the
Camp Whitcomb/Mason and/or Boys & Girls Clubs
representative. While the entire group of Unifest par-
ticipants was walking on the selected path towards the
new lodge, the plaintiff, Kathleen Rintelman, slipped
and fell on the path, sustaining personal injuries and
damages as set forth below.

(Uppercasing in original omitted.) In the Rintelmans'
summary-judgment materials, Mrs. Rintelman con-
tends that the walk was utilitarian only (to get from
here to there). The following are her deposition-
testimony responses to questions asked by a lawyer for
the Boys & Girls Clubs and its insurer:

Q    Were you at least in part walking to enjoy the
     scenery?

A    No.

Q    Why not?

A    Why not? We were walking because we were
     changing lodges.

Q    Is Camp Whitcomb scenic?

A    Some people would find it scenic.

Q    Would you find it scenic?

A    It's in the woods.

Q    Do you find woods scenic?

A    Usually.

Q    When you were walking on February 7 of 2000, prior to the time that you fell at Camp Whitcomb, were you enjoying nature?

A    No.

According to Mrs. Rintelman, she asked if they could be driven to the new lodge but was told that they could not. She testified that it was too cold to walk, in the "20s," and that if there had been a six-to-eight-person van, she would have waited her turn to get on the van rather than walk. She also testified at her deposition that although many of those attending Unifest 2000 participated in a planned but optional "silent hike," she did not because "[t]here were other things to be done as a chaperone other than that, and I didn't want to go." She did admit, however, that it was "a pretty drive going back there," presumably when she arrived, because the "[t]rees" were "pretty." She emphasized, though that she "was not there to look at the scenery."

## II.

¶ 5.    The crux of the Rintelmans' argument is that the trial court erroneously ruled that the recreational-use-immunity statute barred their action seeking recovery for Mrs. Rintelman's injuries. We agree.

¶ 6.    WISCONSIN STAT. § 895.52 is long and complex, and it is set out in full in the footnote.[1] As applicable

---

1

**Recreational activities; limitation of property owners' liability. (1)** DEFINITIONS. In this section:

(a) "Governmental body" means any of the following:

1. The federal government.

2. This state.

3. A county or municipal governing body, agency, board, commission, committee, council, department, district or any other public body corporate and politic created by constitution, statute, ordinance, rule or order.

4. A governmental or quasi-governmental corporation.

5. A formally constituted subunit or an agency of subd. 1., 2., 3. or 4.

(b) "Injury" means an injury to a person or to property.

(c) "Nonprofit organization" means an organization or association not organized or conducted for pecuniary profit.

(d) "Owner" means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property.

2. A governmental body or nonprofit organization that has a recreational agreement with another owner.

(e) "Private property owner" means any owner other than a governmental body or nonprofit organization.

(f) "Property" means real property and buildings, structures and improvements thereon, and the waters of the state, as defined under s. 281.01 (18).

(g) "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature, sport shooting and any other outdoor sport, game or educational activity. "Recreational activity" does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

(h) "Recreational agreement" means a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specified part of the owner's property for any recreational activity.

(i) "Residential property" means a building or structure designed for and used as a private dwelling accommodation or private living quarters, and the land surrounding the building or structure within a 300–foot radius.

(2) No DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115 (2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

(3) LIABILITY; STATE PROPERTY. Subsection (2) does not limit the liability of an officer, employee or agent of this state or of any of its agencies for either of the following:

(a) A death or injury that occurs on property of which this state or any of its agencies is the owner at any event for which the owner charges an admission fee for spectators.

(b) A death or injury caused by a malicious act or by a malicious failure to warn against an unsafe condition of which an officer, employee or agent knew, which occurs on property designated by the department of natural resources under s. 23.115 or designated by another state agency for a recreational activity.

(4) LIABILITY; PROPERTY OF GOVERNMENTAL BODIES OTHER THAN THIS STATE. Subsection (2) does not limit the liability of a governmental

403

body other than this state or any of its agencies or of an officer, employee or agent of such a governmental body for either of the following:

(a) A death or injury that occurs on property of which a governmental body is the owner at any event for which the owner charges an admission fee for spectators.

(b) A death or injury caused by a malicious act or by a malicious failure to warn against an unsafe condition of which an officer, employee or agent of a governmental body knew, which occurs on property designated by the governmental body for recreational activities.

(5) LIABILITY; PROPERTY OF NONPROFIT ORGANIZATIONS. Subsection (2) does not limit the liability of a nonprofit organization or any of its officers, employees or agents for a death or injury caused by a malicious act or a malicious failure to warn against an unsafe condition of which an officer, employee or agent of the nonprofit organization knew, which occurs on property of which the nonprofit organization is the owner.

(6) LIABILITY; PRIVATE PROPERTY. Subsection (2) does not limit the liability of a private property owner or of an employee or agent of a private property owner whose property is used for a recreational activity if any of the following conditions exist:

(a) The private property owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the death or injury occurs, and the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the death or injury occurs exceeds $2,000. The following do not constitute payment to a private property owner for the use of his or her property for a recreational activity:

1. A gift of wild animals or any other product resulting from the recreational activity.

2. An indirect nonpecuniary benefit to the private property owner or to the property that results from the recreational activity.

"Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting, fishing, trapping, camping, picnicking, exploring caves,

3. A donation of money, goods or services made for the management and conservation of the resources on the property.

4. A payment of not more than $5 per person per day for permission to gather any product of nature on an owner's property.

5. A payment received from a governmental body.

6. A payment received from a nonprofit organization for a recreational agreement.

(b) The death or injury is caused by the malicious failure of the private property owner or an employee or agent of the private property owner to warn against an unsafe condition on the property, of which the private property owner knew.

(c) The death or injury is caused by a malicious act of the private property owner or of an employee or agent of a private property owner.

(d) The death or injury occurs on property owned by a private property owner to a social guest who has been expressly and individually invited by the private property owner for the specific occasion during which the death or injury occurs, if the death or injury occurs on any of the following:

1. Platted land.

2. Residential property.

3. Property within 300 feet of a building or structure on land that is classified as commercial or manufacturing under s. 70.32 (2) (a) 2. or 3.

(e) The death or injury is sustained by an employee of a private property owner acting within the scope of his or her duties.

(7) NO DUTY OR LIABILITY CREATED. Except as expressly provided in this section, nothing in this section or s. 101.11 nor the common law attractive nuisance doctrine creates any duty of care or ground of liability toward any person who uses another's property for a recreational activity.

405

nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature, sport shooting and any other outdoor sport, game or educational activity. "Recreational activity" does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

Sec. 895.52(1)(g). As seen from her deposition testimony, Mrs. Rintelman claims that when she fell she was not, as phrased by the statute, walking for "the purpose of exercise, relaxation or pleasure," or "hiking," or engaged in "any other outdoor sport, game or educational activity."

¶ 7. *Urban v. Grasser*, 2001 WI 63, ¶¶ 12–13, 243 Wis. 2d 673, 681, 627 N.W.2d 511, 516, has accurately described the evanescence of the standards governing application of WIS. STAT. § 895.52:

We have all been frustrated by the seeming lack of basic underlying principles in our efforts to state a test that can be easily applied. The principle that the purpose of the legislation is to encourage landowners to open their property to recreational users has provided only limited usefulness.

We conclude that we can do little more than repeat what has been stated continually in prior cases, that is, that each case requires an examination of all the circumstances surrounding the activity, keeping in mind the legislative purpose.

*Urban* restated some of the considerations pertinent to a determination of whether something is "recreational

activity" under the statute. "We have identified a number of those aspects: the intrinsic nature of the activity, the purpose of the activity, the consequences of the activity, and the intent of the user." *Urban*, 2001 WI 63, ¶ 13, 243 Wis. 2d at 681, 627 N.W.2d at 516. *Urban* added two additional factors: "the nature of the property and the intent (or lack thereof) of the property owner." *Id.*, 2001 WI 63, ¶ 13, 243 Wis. 2d at 681, 627 N.W.2d at 517. *Urban* explained:

> The nature of the property can give us insight into the nature of the activity. *See Linville [v. City of Janesville]*, 184 Wis. 2d [705,] 717, 516 N.W.2d 427 [(1994)]; *Nelson v. Schreiner,* 161 Wis. 2d 798, 802, 469 N.W.2d 214 (Ct. App. 1991) ("Actions whose intrinsic nature are recreational and are conducted at a public facility or service dedicated to exercise, relaxation or pleasure may be recreational activities without further proof of the actor's mental purpose."). Likewise, the intent of the owner can give us important perspective. In most cases, it would seem to make little sense to give an owner recreational immunity when in fact the owner does not intend to open the property to recreation, and even more so, when the owner takes positive steps to prevent recreational use. *See Minnesota Fire & Cas. Ins. Co. v. Paper Recycling of LaCrosse*, 2001 WI 64, ¶ 25, 244 Wis. 2d 290, 627 N.W.2d 527.

*Urban*, 2001 WI 63, ¶ 14, 243 Wis. 2d at 681–682, 627 N.W.2d at 517. *Auman ex rel. Auman v. School Dist. of Stanley-Boyd*, 2001 WI 125, ¶ 12, 248 Wis. 2d 548, 559, 635 N.W.2d 762, 767 (footnotes omitted), also summarized the material considerations in determining whether the statute applies to a particular activity:

> Although the injured person's subjective assessment of the activity is pertinent, it is not controlling. A court must consider the nature of the property, the nature of

407

the owner's activity, and the reason the injured person is on the property. A court should consider the totality of circumstances surrounding the activity, including the intrinsic nature, purpose, and consequences of the activity. A court should apply a reasonable person standard to determine whether the person entered the property to engage in a recreational activity.

That an "activity is not enumerated as a recreational activity, nor falls under either of the general broad definitions of a recreational activity" in the statute is not dispositive. *Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 629–630, 528 N.W.2d 413, 415 (1995).

■

¶ 8. We apply these considerations here in an attempt to tack to the destination intended by the legislature—protection from liability of those who open up their property so others can enjoy the recreational benefits of our state's natural resources. *See Miller ex rel. Fehring v. Wausau Underwriters Ins. Co.*, 2003 WI App 58, ¶ 11, 260 Wis. 2d 581, 586–587, 659 N.W.2d 494, 497. As both parties tell us, the facts here are not disputed. Accordingly, whether the defendants are entitled to immunity under the statute is a legal issue subject to our *de novo* review. *See Urban*, 2001 WI 63, ¶ 16, 243 Wis. 2d at 682, 627 N.W.2d at 517.

a. *Intrinsic nature of the activity.*

■

¶ 9. Mrs. Rintelman fell as she was walking. Walking may or may not be a "recreational activity" under the statute, depending on the circumstances. *Compare Lasky v. City of Stevens Point*, 220 Wis. 2d 1, 7–11, 582 N.W.2d 64, 66–68 (Ct. App. 1998) (walking

through park on way to bakery and barber was a "recreational activity" when plaintiff indicated he chose that route to also get exercise), *with Sievert,* 190 Wis. 2d at 625–634, 528 N.W.2d at 414–417 ("walking uninvited onto a neighbor's dock" to greet neighbor who was approaching dock by boat not "recreational activity"). Here, the undisputed evidence is that Mrs. Rintelman was not walking for exercise or to enjoy the scenery. Thus, the intrinsic-nature-of-the-activity consideration supports her contention that the statute does not apply.

b. *The purpose of the activity.*

¶ 10. The undisputed evidence is that Mrs. Rintelman was walking to move from one building to another—unlike the situation in *Lasky,* she was not walking for either exercise or to enjoy the scenery. Thus, the purpose-of-the-activity consideration supports her contention that the statute does not apply.

c. *The consequences of the activity.*

¶ 11. *Linville* helps us get a handle on this consideration. There, Walter Hadden drove Kelly Linville and her four-year-old son, David, to reconnoiter a fishing-spot they would visit the following day. *Linville,* 184 Wis. 2d at 711–712, 516 N.W.2d at 429. Hadden drove to the pond where they would fish, "parked at the edge of the water and shined the van lights on the water to illuminate a good fishing area." *Id.,* 184 Wis. 2d at 712, 516 N.W.2d at 429. Unfortunately, the van got stuck in the mud. *Ibid.* Linville got out of the van and tried to push it free. *Ibid.* "Instead of backing up, the van jumped forward into the Pond and sank with Hadden and David inside of it." *Ibid.* One of the issues in the case was whether Linville and her son were

engaged in "recreational activity" at the time. *Id.*, 184 Wis. 2d at 710–711, 516 N.W.2d at 428.

¶ 12. Although Linville testified in her deposition that she and her son went with Hadden to the pond unwillingly, *id.*, 184 Wis. 2d at 712, 717, 516 N.W.2d at 429, 431, her subjective intent was not dispositive of whether she was engaging in recreational activity when they visited the pond and the van lurched into the water, *id.*, 184 Wis. 2d at 715–717, 516 N.W.2d at 430–431. Noting that the " 'purpose and consequence of the activity are relevant' " to an assessment of the recreational nature of Linville's activity, *Linville* observed: "It is undisputed that Hadden, [Linville], and David were at the Pond to look at fishing areas and to prepare for fishing the next day. Fishing is an activity enumerated in the statute and activities in preparation of fishing have been characterized as 'recreational activiti[ies].' " 184 Wis. 2d at 716–717, 516 N.W.2d at 430–431 (quoted sources omitted; brackets by *Linville*). *Linville* held that the statute applied. *Id.*, 184 Wis. 2d at 717, 516 N.W.2d at 431.

¶ 13. Unlike the situation in *Linville*, where the projected consequence (cut short by the drownings) of the visit to the pond was fishing, the undisputed evidence here is that the only projected consequence (cut short by her fall) of Mrs. Rintelman's walking on the path where she was injured was to move from one building to another in connection with her duties as a volunteer Unifest-2000 chaperon. Moving from one building to another is not a "recreational activity" unless it is inextricably connected to an activity that *is* recreational. *See Hupf v. City of Appleton*, 165 Wis. 2d 215, 220–222, 477 N.W.2d 69, 71–72 (Ct. App. 1991) (walking from recreational activity by only available

route is within the statute). As we point out in subpart g below, there is no summary-judgment evidence that Mrs. Rintelman was at Camp Whitcomb/Mason to participate in recreational activity. Thus, the consequences-of-the-activity consideration supports her contention that the statute does not apply.

d. *Intent of the user.*

¶ 14.   The injured plaintiff's intent in doing what he or she was doing when injured on another's land is a consideration material to whether the statute applies, *Urban*, 2001 WI 63, ¶ 13, 243 Wis. 2d at 681, 627 N.W.2d at 516, albeit, as we have seen, not dispositive, *Linville*, 184 Wis. 2d at 715, 516 N.W.2d at 430. Here, the uncontested summary-judgment material is that Mrs. Rintelman was not "hiking" or even walking for exercise, or strolling through the woods to enjoy the scenery. Thus, the intent-of-the-plaintiff consideration supports her contention that the statute does not apply.

e. *Nature of the property.*

¶ 15.   None of the parties disputes that Camp Whitcomb/Mason is rural property that is not only suited for recreational activity but, indeed, is used for recreational activity. Thus, the nature-of-the-property consideration supports the defendants' contention that the statute applies.

f. *Intent of the property's owner.*

¶ 16.   None of the parties disputes that the Boys & Girls Clubs intends that Camp Whitcomb/Mason be used for recreational activity; indeed, that appears to be the property's predominate use. Thus, the intent-of-the-property's-owner consideration supports the defendants' contention that the statute applies.

411

g. *Reason Mrs. Rintelman was on the property.*

¶ 17.   Although most if not all of the other persons attending Unifest 2000 at Camp Whitcomb/Mason may have been there at least in part to participate in recreational activities, the summary-judgment record is devoid of any evidence that that is why Mrs. Rintelman was there. The only evidence in the summary-judgment record is that she was there as a volunteer chaperon and that she did not participate in any of the recreational activities—either planned or unplanned. As proponents of interposing WIS. STAT. § 895.52 as a barrier to their liability for Mrs. Rintelman's injuries, the defendants had the burden to present in support of their motion for summary judgment evidence that would, if believed, sustain their burden at trial. *See Estate of Anderson v. Anderson,* 147 Wis. 2d 83, 88, 432 N.W.2d 923, 926 (Ct. App. 1988) (party asserting affirmative of a proposition has the burden of proof); *Transportation Ins. Co. v. Hunzinger Constr. Co.,* 179 Wis. 2d 281, 291–292, 507 N.W.2d 136, 140 (Ct. App. 1993) (burden of demonstrating sufficient evidence to go to trial on party who has burden of proof on issue at trial). They have not done so. Thus, the reason-plaintiff-was-on-the property consideration supports Mrs. Rintelman's contention that the statute does not apply.

¶ 18.   As the decisions we have discussed demonstrate, mere presence on property suitable for recreational activity when a plaintiff is injured does not, *ipso facto,* make applicable WIS. STAT. § 895.52. *Lasky,* 220 Wis. 2d at 7, 582 N.W.2d at 66–67; *Hupf,* 165 Wis. 2d at 220, 477 N.W.2d at 71. Indeed, the statute *in haec verba* requires that the "person . . . enter[] the owner's prop-

erty *to engage in a recreational activity.*" Sec. 895.52(2) (emphasis added). Had the legislature intended a different rule, it could have easily so provided.[2] As we have seen, *if* there were evidence that Mrs. Rintelman was participating in recreational activities while at Unifest 2000, there might be an issue whether the walk during which she fell was so inextricably connected with those activities to make the statute applicable. *See Hupf*, 165 Wis. 2d at 221–222, 477 N.W.2d at 72 (walking from recreational activity by only available route is within the statute); *see also Urban*, 2001 WI 63, ¶ 21, 243 Wis. 2d at 685, 627 N.W.2d at 518 (*Hupf*'s "reasoning suggests that it is appropriate for a court, under similar facts, to consider the activity that is connected to the walk in determining whether the walk is a 'recreational activity.' "). As we have seen, however, the defendants have the burden of proving the applicability of § 895.52. *See Anderson*, 147 Wis. 2d at 88, 432 N.W.2d at 926 (party asserting affirmative of a proposition has the burden of proof), and here there is nothing in the summary-judgment record that would permit a jury to find that Mrs. Rintelman attended Unifest 2000 at Camp Whitcomb/Mason "to engage in a recreational activity." Accordingly, we reverse and remand for trial.

*By the Court.*—Judgment reversed and cause remanded.

---

[2] The provision could have read (additions underlined; deletions struck-through): "no owner . . . or agent of an owner owes to any person who enters the owner's property if that property is suitable for to engage in a recreational activity: 1. A duty to keep the property safe for recreational activities[;] 2. A duty to inspect the property . . . [; or] 3. A duty to give warning of an unsafe condition, use or activity on the property."