COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2036**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV1441**

**IN COURT OF APPEALS
DISTRICT IV**

JASON LYLE WAHOSKE,

    PLAINTIFF-CO-APPELLANT,

  V.

HARTFORD FIRE INSURANCE COMPANY,

    DEFENDANT-APPELLANT,

FLEET WHOLESALE SUPPLY CO. LLC AND MILLS FLEET FARM LLC,

    DEFENDANTS-THIRD-PARTY
    PLAINTIFFS-APPELLANTS,

INLAND LABEL AND MARKETING SERVICES LLC HEALTH AND WELFARE BENEFIT PLAN C/O ANTHEM BLUE CROSS BLUE SHIELD,

    DEFENDANT,

  V.

ROBIN STIBB AND RURAL MUTUAL INSURANCE COMPANY,

    THIRD-PARTY DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Dane County: RICHARD G. NIESS, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   In anticipation of annual hunting seasons beginning in 2009, each summer Robin Stibb would affix a tree stand that he owned to a tree on land owned by his parents.  Then, about six months later, Stibb would take the stand down.  In November 2017, a friend of Stibb's, Jason Wahoske, was bow hunting from Stibb's stand when Wahoske fell to the ground and was injured, resulting in this litigation.

¶2     Wahoske commenced the action by filing a products liability claim against Fleet Wholesale Supply Company LLC, Mills Fleet Farm LLC, and Hartford Fire Insurance Company (collectively, "Fleet Farm"), based in part on the allegation that Stibb had purchased the tree stand from a Mills Fleet Farm store.  Fleet Farm filed a third-party action against Stibb and Rural Mutual Insurance Company (collectively, "the Stibb parties"), on the theory that Stibb had negligently maintained and installed the stand.  Wahoske amended his complaint to state a direct action claim against Stibb's insurer Rural Mutual.  The Stibb parties moved for summary judgment on the ground that they are entitled to recreational immunity under WIS. STAT. § 895.52 (2017-18).[1]  The circuit court granted the motion.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3      Wahoske and Fleet Farm appeal. They contend that the Stibb parties are not entitled to recreational immunity for various reasons. We reject those arguments based on ***Peterson v. Midwest Sec. Ins. Co.***, 2001 WI 131, 248 Wis. 2d 567, 636 N.W.2d 727, which addresses similar facts to those presented here and resolved them in favor of immunity. Under the reasoning in ***Peterson***, as discussed in ***Roberts v. T.H.E. Ins. Co.***, 2016 WI 20, 367 Wis. 2d 386, 879 N.W.2d 492, the Stibb parties are entitled to immunity because at the time of the accident Stibb was the "owner" of a "structure," namely a tree stand that was intended to remain in place for an extended period, which counts as "property" that was being used for a "recreational activity," hunting. *See* WIS. STAT. § 895.52(1), (2). Accordingly we affirm.

## BACKGROUND

¶4      There is no dispute regarding the following facts. On November 6, 2017, Wahoske went bow hunting from a commercially purchased, portable "Gorilla High & Tight Tree Stand." The stand consisted of a 20-foot metal ladder, a seat, and a metal platform. Wahoske fell to the ground from the tree stand and was injured.[2]

¶5      Wahoske's friend, Robin Stibb, purchased the tree stand in 2009.[3] Each hunting season thereafter, Stibb installed it on a tree at the beginning of the season and took it down at the end. More specifically, there was testimony that

---

[2] We have no need to address theories of liability generally, or negligence in particular. However, for context we note that the parties do not dispute, at least for purposes of resolving the recreational immunity issue, that the accident occurred because cables holding Stibb's stand in place snapped.

[3] Wahoske alleged that Robin Stibb purchased the stand at a Mills Fleet Farm store in Oshkosh, but Fleet Farm disputed this allegation. We have no need to address this factual dispute, given our basis for affirming summary judgment.

Stibb installed the stand on a tree each July or August and took it down around mid-January, and the parties treated this typically roughly six-month period as an accepted fact in the course of oral argument in the circuit court. For each installment of approximately six months, Stibb cinched the stand to the tree using nylon ratchet straps.

¶6 At the time of the accident, Wahoske had permission from Stibb to hunt, and to use hunting stands such as the one at issue here, on the land where the accident occurred. While the land belonged to Stibb's parents, the parents had delegated to Stibb authority to determine who would be allowed to hunt there.

¶7 The operative complaint filed by Wahoske against Fleet Farm is a products liability action which alleges that the tree stand "is defective because it contains a manufacturing defect, is defective in design, and/or is defective because of inadequate instructions or warnings."[4]

¶8 Fleet Farm filed a third-party complaint against the Stibb parties alleging negligence, based on the fact that Stibb installed the tree stand and was responsible for its maintenance. In an amended complaint, Wahoske stated a direct action claim against Rural Mutual as Stibb's insurer.

¶9 The Stibb parties moved for summary judgment based on immunity under WIS. STAT. § 895.52, the recreational immunity statute. As discussed in more detail below, putting aside exceptions that are not at issue in this appeal and

---

[4] There is no dispute that the manufacturer of the tree stand is defunct and in any case it is not a party to this action.

Separately, Wahoske's complaint also named Inland Label and Marketing Services LLC Health and Welfare Benefit Plan, c/o Anthem Blue Cross Blue Shield, based on the allegation that it paid health care expenses and claims to be subrogated to Wahoske's rights for health care payments, but no aspect of subrogation is raised in this appeal.

speaking broadly, the recreational immunity statute immunizes property owners from liability when a person is injured or killed while engaged in recreational activity on the owner's property. *See* WIS. STAT. § 895.52(1), (2).

¶10 In their summary judgment motion, the Stibb parties argued for immunity because Wahoske was hunting from a structure owned by Stibb and no exception to the general rule of recreational immunity applies here. The Stibb parties relied on *Peterson*, in which our supreme court determined that "the owner of a tree stand used for deer hunting is entitled to recreational immunity" as the "'owner'" of "'property'" under WIS. STAT. §§ 895.52(1)(d)1. and 895.52(1)(f), even if the stand owner "does not also own the real property upon which the tree stand is situated." *See Peterson*, 248 Wis. 2d 567, ¶¶1, 24 (tree stand from which plaintiff fell was a "structure," and therefore owner of stand owned "property" within the meaning of the recreational immunity statute).

¶11 Fleet Farm opposed summary judgment on the following grounds: Stibb was not the owner of the land on which Wahoske was hunting at the time of the accident; the alleged negligence of Stibb in maintaining and installing the stand did not pertain to a condition associated with the land; and the stand was not a "structure" as that term is used in WIS. STAT. § 895.52(1)(f). Wahoske adopted these arguments.

¶12 The circuit court granted the motion for summary judgment, concluding in pertinent part that *Peterson* controls. Wahoske and Fleet Farm appeal.

## DISCUSSION

¶13 We review de novo the grant or denial of summary judgment, employing the same methodology as the circuit court. ***Green Spring Farms v. Kersten***, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In deciding if genuine issues of material fact exist, we draw all reasonable inferences in favor of the nonmoving party. ***Metropolitan Ventures, LLC v. GEA Assocs.***, 2006 WI 71, ¶20, 291 Wis. 2d 393, 717 N.W.2d 58. Here, we interpret a statute and related case law, which are matters of law that we decide de novo. *See* ***Meyers v. Bayer AG***, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.

¶14 As the party asserting recreational immunity as a bar against liability, the Stibb parties carry the burden of demonstrating that WIS. STAT. § 895.52 applies. *See* ***Rintelman v. Boys & Girls Clubs***, 2005 WI App 246, ¶17, 288 Wis. 2d 394, 707 N.W.2d 897.

¶15 Excluding statutory exceptions not at issue here, *see* WIS. STAT. § 895.52(3)-(6), the recreational immunity statute provides in pertinent part:

> **(1) Definitions.** In this section:
>
> ….
>
> (d) "Owner" means …:
>
> 1. A person, …, that owns, leases or occupies property.
>
> ….
>
> (f) "Property" means real property and buildings, structures and improvements thereon, and the waters of the state ….

(g) "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting ….

….

**(2) No duty; immunity from liability.** (a) … [N]o owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property ….

3. A duty to give warning of an unsafe condition, use or activity on the property.

WIS. STAT. § 895.52(1), (2).

¶16 Our supreme court has generally summarized the statute:

The recreational immunity statute immunizes property owners against liability "for any injury to a person engaged in a recreational activity on the owner's property." If the statute applies, a property owner owes no duty of inspection, warning or safety to "any person who enters the owner's property to engage in a recreational activity," and is otherwise immune from liability for injuries to any person engaged in recreational activity on the owner's property. WIS. STAT. § 895.52(2)(a) and (b).

*Peterson*, 248 Wis. 2d 567, ¶12 (citation and footnote omitted).

¶17 With that background, we now summarize ***Peterson*** and explain how its interpretation of these statutory terms controls here. Then we explain why we reject specific arguments made by Wahoske and Fleet Farm.

¶18 Like Wahoske, Peterson was injured when he fell from a tree stand while bow hunting. ***Peterson***, 248 Wis. 2d 567, ¶¶2, 7. Thus, as in this case, there was no dispute about the fact that Peterson was injured while engaging in a

7

"recreational activity." *See id.*, ¶13; WIS. STAT. § 895.52(1)(g) (listing "hunting" as a "recreational activity").

¶19 The stand in *Peterson* was "made of wood" (as noted above, the stand here was metal) but, similar to the tree stand here, it was "basically a small … platform 'cinched in against the tree with a chain' about 20 feet off the ground, accessible by way of a metal ladder." *Peterson*, 248 Wis. 2d 567, ¶¶5, 17.

¶20 Also like Wahoske, Peterson was hunting with permission on land owned by one set of people, but the tree stand was owned by a relative of the landowners, Shaw. *Id.*, ¶¶2, 5-6. Thus in *Peterson*, as in the instant case with Stibb's ownership established, there was no dispute about who owned the tree stand.[5]

¶21 The circuit court in *Peterson* dismissed the case based on recreational immunity and our supreme court affirmed. Our supreme court determined in pertinent part that the tree stand from which Peterson fell was "property," in particular a "structure" or "improvement" belonging to Shaw as those terms are used in WIS. STAT. § 895.52(1)(f). *Peterson*, 248 Wis. 2d 567, ¶¶3, 9. As part of its analysis, the *Peterson* court stated:

> A tree stand is a "structure" as that term is commonly and
> ordinarily understood. The statute does not require that the

---

[5] The supreme court in *Peterson v. Midwest Sec. Ins. Co.*, 2001 WI 131, 248 Wis. 2d 567, 636 N.W.2d 727, did not address the determination of the circuit court that Shaw was an "occupier" of "property," under the recreational immunity statute, but rested its decision on his ownership of the tree stand. *Id.*, ¶24 n.8. Similarly here, we have no need to address references made by the parties to "occupier" status, and we base our analysis on the undisputed fact that Stibb owned the tree stand, which we conclude was a "structure" under WIS. STAT. § 895.52(1)(f), as we explain in the text.

On a related note, we also have no need to address the term "improvement" in the phrase "buildings, structures and improvements thereon" in WIS. STAT. § 895.52(1)(f)., because we resolve this appeal based on the *Peterson* court's interpretation of the term "structures."

owners of "buildings, structures and improvements" also own the underlying real property in order to qualify for immunity. Accordingly, as the owner of the tree stand, Shaw is entitled to immunity under the statute, even though he did not also own the real property on which the tree stand was built.

*Id.*, ¶4.

¶22    The court noted that the word "structure" is not defined in WIS. STAT. § 895.52, but stated that the common and ordinary meaning of "structure" is

"something constructed," or "something made up of a number of parts that are held or put together in a particular way." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1782 (3d ed.1992). "Structure" is also defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." BLACK'S LAW DICTIONARY, 1424 (6th ed. 1991).

*Peterson*, 248 Wis. 2d 567, ¶16. Applying these definitions, the court concluded that Shaw's tree stand from which Peterson fell was a "structure," and therefore "property," under the recreational immunity statute because "it was constructed, built, or put together in a particular way, and was made up of parts joined together." *Id.*, ¶17.

¶23    The court rejected Peterson's argument that "the phrase 'buildings, structures and improvements'" in WIS. STAT. § 895.52(1)(f), "merely modifies 'real property,'" which would mean that there are only two categories of "property": (1) real property (together with buildings, structures, or improvements thereon); and (2) the waters of the state. *Peterson*, 248 Wis. 2d 567, ¶18. The court concluded that Peterson's approach would rewrite the statutory language, which establishes that there are not two but three categories of "property," including one that includes "structures." *Id.*, ¶¶19, 20 (favorably citing *Doane v. Helenville Mut. Ins. Co.*, 216

9

Wis. 2d 345, 352, 575 N.W.2d 734 (Ct. App. 1998), and noting its three-category principle).

¶24　As can be readily seen from our summary above, there is a tight alignment between the pertinent facts here and the facts in *Peterson*. Both cases involved the plaintiff hunting from a tree stand that was owned by the person seeking immunity, where the stand was cinched to a tree for an extended period, with a long ladder extending to the ground. In such a case, the court explained, the owner of the stand has immunity because the stand qualifies as "'something constructed,'" or "'something made up of a number of parts that are held or put together in a particular way,'" or a "'construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner.'" *See id.*, ¶16 (quoting AMERICAN HERITAGE DICTIONARY). Thus, following *Peterson*, we conclude that the Stibb parties have immunity here.

¶25　We recognize that, as Wahoske emphasizes, the inquiry in a recreational immunity case is to be "'intensely fact-driven.'" *See Wilmet v. Liberty Mut. Ins. Co.*, 2017 WI App 16, ¶14, 374 Wis. 2d 413, 893 N.W.2d 251 (quoting *Auman v. School Dist. of Stanley-Boyd*, 2001 WI 125, ¶12, 248 Wis. 2d 548, 635 N.W.2d 762). However, the facts in this case are a very close match to the facts in a case decided by our supreme court, as we have shown above and we discuss further below in addressing arguments made by Wahoske and Fleet Farm.

¶26　We begin our discussion of the arguments made by Wahoske and Fleet Farm by rejecting the various references and arguments to the effect that the reasoning in *Peterson* is flawed or that it is not good law. One example is a policy-based argument, addressed to the purposes of the recreational immunity statute,

advanced by Fleet Farm. We are not free to entertain such an argument if *Peterson* controls.

¶27 Another example is an argument that our supreme court in *Roberts* abrogated or qualified *Peterson* in a way that should change the outcome here. We discuss below why we reject that argument. Putting that argument to the side for the moment, Wahoske and Fleet Farm fail to identify any opinion of our supreme court or new enactment of the legislature that abrogates any statement in *Peterson* and therefore we must apply *Peterson*. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("[t]he supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

¶28 In an attempt to distinguish *Peterson*, Wahoske and Fleet Farm argue that Stibb's installation of a store-bought, portable tree stand that he had not himself made from elemental materials is not equivalent to Shaw's conduct. To recap, as described by the court in *Peterson*, Shaw "buil[t] two deer stands in the woods," each with "a small wooden platform 'cinched in against the tree with a chain' about 20 feet off the ground, accessible by way of a metal ladder." *Peterson*, 248 Wis. 2d 567, ¶5. But the tree stand that Shaw created as described in *Peterson*—however do-it-yourself it might have been—was the functional equivalent of Stibb's stand. Nothing in *Peterson* suggests that the difference between a store-bought stand and a do-it-yourself stand could matter on the topic of whether it is a "structure" under WIS. STAT. § 895.52(1)(f).

¶29 This primarily leaves the argument that relies on *Roberts*. Wahoske and Fleet Farm contend that *Roberts* abrogated or qualified *Peterson* so that a tree stand could be a "structure" that counts as "property" for purposes of the recreational immunity statute only if the tree stand is, as Wahoske puts it,

"(1) permanent; (2) 'built or constructed on the real property'; and (3) designed to remain in one place as opposed to transient." Although Wahoske quotes and paraphrases specific references in *Roberts* to derive this purported three-part test, it is not clear how Wahoske would define its various elements.[6] But we need not try to puzzle that out, because such a test cannot be found in *Roberts*; whatever Wahoske's purported test might mean, we now explain why it is at best an exaggeration and distortion of the reasoning in *Roberts*.

¶30    The plaintiff in *Roberts* was injured in a collision with a moving hot air balloon basket while attending a charity event. *Roberts*, 367 Wis. 2d 386, ¶¶5, 10. The collision occurred because a line that tethered the balloon to a connection on the ground snapped. *Id.* Sundog owned the hot air balloon and provided tethered rides at the event. *Id.*, ¶6. Our supreme court considered whether Sundog "occupied" the shooting range so that, at the time of the accident, it was a statutory owner and thereby entitled to recreational immunity under WIS. STAT. § 895.52(1)(d)1.

¶31    Pertinent here, in the course of that discussion, the *Roberts* court stated the following, which is the entire basis for the arguments now advanced by Wahoske and Fleet Farm:

> Sundog relies on *Peterson*, in which this court held that the owner of a tree stand was entitled to immunity as the owner of a "structure" on real property. Peterson adopted the court of appeals' decision in *Doane*. The *Doane* court identified three categories of property that qualify owners for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3) waters of the state. Sundog argues that[,] like the tree stand in *Peterson*, the hot air balloon is a structure because it was constructed or put

---

[6] It is difficult to understand how Wahoske would apply the test that he suggests. He fails to define the terms he uses, which would be susceptible to widely varied meanings.

12

> together in a particular way and made up of parts joined together.
>
> Although it may have been made up of parts joined together, the hot air balloon ride was not constructed on real property. In *Peterson*, the tree stand was permanent and built or constructed on the real property. The hot air balloon in this case was transient and designed to be moved at the end of the day. It was also not designed to remain in one place. The balloon was tethered to two trees and a pick-up truck because of the manner in which Sundog was using it on the day of the event. Thus, we conclude that the hot air balloon is not a structure as that term is applied in WIS. STAT. § 895.52(1)(f).

*Roberts*, 367 Wis. 2d 386, ¶¶44-45 (citations omitted).

¶32 This passage in *Roberts* does not suggest an intent to cast doubt on any statement in *Peterson*, or the result in *Peterson*. Instead, the court in *Roberts* seeks only to explain *Peterson* and perhaps expand slightly on the definition of "structure" in WIS. STAT. § 895.52(1)(f). *Roberts* compares the "transient" and designed-and-built-to-be-moved nature of a hot air balloon with the "permanent" and "built or constructed on the real property" nature of a tree stand cinched to a tree for extended use during a hunting season. Instead of stating a three-part test of indeterminate meaning, as Wahoske now proposes, the court in *Roberts* suggests that there is a continuum of features that make a given object in a given setting more or less like a "structure" in the recreational immunity context and that relevant features include indicia of permanency. In this sense, *Roberts* occupies a somewhat larger footprint than does *Peterson*, because *Roberts* elaborates to explain that a "structure" cannot be transient and must be in some sense "permanent."

¶33 Notably for current purposes, *Roberts* does not challenge the conclusion of *Peterson* that, under WIS. STAT. § 895.52(1)(f), a tree stand for hunting that is cinched to a tree for an extended period is a "structure" under the

13

statute. This is because such a tree stand is designed and constructed to remain firmly attached to a feature of the land for an extended period and not, in the words of *Roberts*, like a hot air balloon "designed to be moved at the end of the day." *See Roberts*, 367 Wis. 2d 386, ¶45. As noted above, here there is no dispute that owner Stibb intended to use his tree stand by affixing it to a tree for about six months of every year, and not by moving it regularly, certainly not a daily basis. In sum, under the logic of *Roberts*, a hot air balloon is simply further down the continuum in the direction *away* from permanency and being affixed to the land than the two similarly used tree stands in *Peterson* and this case, both of which were designed and constructed for extended use in the same location.

¶34 The *Roberts*-based argument boils down to the proposition that, in characterizing Shaw's stand in *Peterson* as "permanent," the *Roberts* court contemplated a rule under which all "structures" under WIS. STAT. § 895.52(1)(f) must be designed and intended to remain in place indefinitely. We do not construe the *Roberts* court to have conveyed this idea. First, the brief description of Shaw's stand in *Peterson* does not clearly portray an object that was designed and intended to remain in place indefinitely, and the *Roberts* court adds no assumptions or interpretations on this topic. Presumably, Shaw could have unwrapped the chain that cinched his stand to the tree at any time.[7] There is no clear difference in "permanence" or "transience" between the two tree stands. Second, it is evident that the court in *Roberts* was focused on its task of evaluating the nature of a

---

[7] Wahoske asserts that the tree stand in *Peterson* was "completely immovable," but fails to explain why that is the only way to interpret the stand described in *Peterson*. As best we can discern, Wahoske's assertion is based on the concept that any wooden tree stand must be firmly hammered or screwed into place, but the *Peterson* court referred to it as being "'cinched in against the tree with a chain.'" *See Peterson*, 248 Wis. 2d 567, ¶5. Further, as a matter of common sense, it is easy to imagine hunters wanting to have the ability to move at least some kinds of stands from one tree to another, depending on the presence or absence of vegetation and other factors that might change over time, or based merely on preferences for new hunting spots.

partially tethered-to-earth hot air balloon. In using the word "permanent," without defining the term, the court appears to have been primarily referring to the obvious difference between a basket hanging from a floating balloon that will be gone from the area the very next day and a tree stand that is designed and intended to be firmly cinched to a tree for an extended period, not on a merely transient basis.

¶35 On the permanency topic, Wahoske and Fleet Farm point out that the tree stand here was allegedly designed, according its manufacturer, to be used for no more two weeks at a time in the same fixed position. They suggest that this shows that the stand that Stibb bought was designed for mere transient use. The first problem with this argument based on the manufacturer's recommendation is that Wahoske and Fleet Farm fail to persuade us that two weeks could not be a sufficiently long period for a tree stand to be considered a "structure" under these general circumstances, consistent with the permanency continuum referenced in *Roberts* in discussing *Peterson*. The second problem is that, as the Stibb parties suggest, it is difficult to see how the manufacturer's recommended two-week rule could play a significant role in the analysis of whether the stand here, *as it was in fact intended to be used by its owner*, was a "structure" in this context under the reasoning in *Peterson* and *Roberts*.

¶36 It is unclear from the briefing, but Fleet Farm may intend to argue that immunity is not available here because the accident is not alleged to have been the result of Stibb's negligent conduct that was associated "with the land," as that concept is explained in *Linville v. City of Janesville*, 184 Wis. 2d 705, 516 N.W.2d 427 (1994), and *Kosky v. International Ass'n of Lions Clubs*, 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997). We need not describe this concept from *Linville* and *Kosky* in detail because, as we now explain, if Fleet Farm intends to make such an argument it collapses on its own terms.

15

¶37    The argument would be that immunity is not available "[b]ecause Fleet Farm seeks to hold Stibb responsible for his negligent maintenance and installation of the stand at issue and not a condition associated with the land." However, the Stibb parties reasonably point out that the premise of this "not associated" argument is clearly unsustainable under the reasoning in *Peterson*, as reaffirmed in *Roberts*. That is, under the reasoning in *Peterson* and *Roberts*, Stibb's alleged negligence involving the stand could hardly have been more "associated" with the "property" at issue. This is because the "property" was the stand—the very platform on which the recreational activity occurred. Further, Fleet Farm implicitly concedes this argument by failing to reply to it. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to refute proposition asserted in response brief may be taken as a concession).[8]

¶38    In sum, the Stibb parties have shown that they are entitled to recreational immunity and accordingly we affirm the order granting them summary judgment.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Wahoske for the first time in his reply brief makes an argument based on a definition of "fixture" that he submits is a feature of tax law. This argument appears inapt on its face, but in any case we ignore it because Wahoske did not give the Stibb parties an opportunity to address it. We generally do not consider arguments made for the first time in a reply brief. *See Turner v. Sanoski*, 2010 WI App 92, ¶12 n.6, 327 Wis. 2d 503, 787 N.W.2d 429.